# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2486
_____

United States of America,          *
                                   *
            Appellee,              *
                                   *
      v.                           *
                                   *
                                   *
Vince Kelley,                      *
                                   *
            Appellant.             *


_____

                                          Appeals from the United States
No. 97-2487                               District Court for the
_____                               Eastern District of Missouri

United States of America,          *
                                   *
            Appellee,              *
                                   *
      v.                           *
                                   *
Jan Kelley,                        *
                                   *
            Appellant.             *

_____

No. 97-2488
_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Pavco Co., | * |
| | * |
| Appellant. | * |

_____

Submitted:   November 18, 1997

Filed:   August 14, 1998

_____

Before RICHARD S. ARNOLD,[1] Chief Judge, and McMILLIAN and MAGILL,
      Circuit Judge.

_____

McMILLIAN, Circuit Judge.

Vince Kelley, Jan Kelley, and PAVCO Co. appeal from final judgments entered
in the United States District Court[2] for the Eastern District of Missouri upon a jury

_____

[1]The Honorable Richard S. Arnold stepped down as Chief Judge of the
United States Court of Appeals for the Eighth Circuit at the close of business on
April 17, 1998.  He has been succeeded by the Honorable Pasco M. Bowman.

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern
District of Missouri.

verdict finding appellants guilty of 5 counts of mail fraud.  For reversal, appellants contend that the district court erred in (1) failing to hold an evidentiary hearing on and denying their motions to dismiss the indictment because of selective or vindictive prosecution,  (2) denying their motions for judgment of acquittal on the mail fraud counts because of the insufficiency of the evidence, and (3) refusing to withdraw the evidence related to the dismissed counts and to instruct the jury not to consider that evidence in its deliberations on the mail fraud counts.  For the reasons discussed below, we affirm the judgments of the district court.

JURISDICTION

Jurisdiction in the district court is based upon 18 U.S.C. § 3231 and in this court upon 28 U.S.C. § 1291.  The appeals were timely filed pursuant to Fed. R. App. P. 4(b).

BACKGROUND FACTS

This case involved a scheme to obtain money in which appellants falsely represented that their employees were union members entitled to union scale wages, union dues and other benefits when in fact only a small number of such employees were union members.  Appellants pocketed the difference (which amounted to thousands of dollars) and did not pass on the moneys to the union or the employees.

In 1984 or 1985 Clyde "Nip" Kelley, who is Vince Kelley's father, decided to begin a new construction company in Cape Girardeau, Missouri.  According to the government's theory of the case, Nip Kelley had two problems-- he wanted the new company to be eligible to bid on contracts as a special category contractor, even though he was not a member of a special category, and he wanted the new company to be a non-union employer, even though he was contractually obligated to operate as a union

employer. In order to circumvent these problems, Nip Kelley enlisted the aid of his son and his son's wife, Vince Kelley and Jan Kelley. Nip Kelley in essence asked Vince and Jan Kelley to "front" for him and run the new company (PAVCO).

PAVCO bid on contracts as a special category contractor and hired mostly non-union employees. One of the contracts was the Procter & Gamble plant in Neelys Landing, Missouri; Fru-Con Construction Co. (Fru-Con) was the general contractor. Fru-Con hired PAVCO as one of its subcontractors. The subcontractors signed 2-year contracts. PAVCO bid on and was awarded three 2-year contracts for 1991-1993, 1993-1995 and 1995-1997. Vince Kelley prepared the bid package and submitted it to Fru-Con. The Craftsmen Independent Union (union) prepared an "affiliation letter" to notify Fru-Con and other contractors which subcontractors were affiliated with the union. According to the government's theory of the case, in the construction industry, "affiliation" means that all of the employees of the subcontractor are members of the union with which the subcontractor claimed affiliation. PAVCO represented to the union that it was "affiliated" and the union so informed Fru-Con (and others).

Fru-Con required its subcontractors to complete time and material forms showing their employees' base rate of pay, their union affiliation, if any, and the required union dues and benefits payments. Vince Kelley filled in these forms showing the union base rate of pay, union dues and union benefits. However, most of the PAVCO employees were not union members. The forms thus misrepresented the union status of PAVCO employees and caused Fru-Con to believe erroneously that PAVCO was affiliated with the union. Fru-Con relied on the bid package information in reviewing and awarding contracts and as a basis for paying subcontractors' employees. In other words, on the basis of the information submitted by PAVCO in its bid package, including the time and material forms,

PAVCO was over-billing Fru-Con because Fru-Con paid PAVCO employees the union base pay rate, union dues and union benefits. Fru-Con could have contracted with non-union companies and would have paid non-union rates.

Vince Kelley and Jan Kelley prepared and mailed "subcontract receipt affidavits and lien waivers" with billing statements to Fru-Con. Most of these documents were prepared and mailed to Fru-Con by Jan Kelley. Fru-Con reviewed them and paid PAVCO on the basis of these documents. As noted, these documents showed PAVCO employees as union employees and requested payment for their labor as union employees. Jan Kelley knew that the documents represented PAVCO employees as union employees even though she also knew that few PAVCO employees were in fact union employees and thus were not entitled to union wage rates, union dues or union benefits.

As a result of this scheme, Fru-Con overpaid appellants $38,879.60 in union dues and union benefits payments for the 1991-1993 contract. According to the government's theory of the case, appellants did not forward these funds to the union or to PAVCO employees but instead simply kept them. The same thing happened with respect to the 1993-1995 (total of $87,570.83 in overpayments) and 1995-1997 contracts. Fru-Con discovered the inconsistencies in the 1995-1997 bid package and requested clarification from Vince Kelley. Vince Kelley sent Fru-Con documents which showed that PAVCO was not "affiliated" with the union and that PAVCO employees were non-union but had been paid union wage rates and benefits. Fru-Con stopped contracting with PAVCO.

Ironically, during these years, Vince Kelley was a trustee of the union health and welfare fund. In addition, several PAVCO employees had asked Vince Kelley about health insurance and he told them that there was no health insurance, even

though Fru-Con had paid PAVCO more than $83,000 for benefits including health insurance.

This case began as an investigation by the United States Department of Labor of alleged union misconduct. Government agents discovered the PAVCO scheme and suspected union officials might be involved. During this period, Fred Kelley, who is Nip Kelley's brother and Vince Kelley's uncle, was the head of the union. Government agents met with Vince Kelley and his attorney and sought Vince Kelley's cooperation in the investigation of the union. Vince Kelley essentially denied he knew anything and refused to cooperate. After further investigation, labor investigators met with Vince Kelley and his attorney a second time. Government agents outlined their case and proposed that, in return for his cooperation, Vince Kelley could plead guilty and his wife would not be charged. Vince Kelley again denied any knowledge and refused to cooperate.

In August 1996 a federal grand jury charged Vince Kelley, Jan Kelley and PAVCO with mail fraud, making false statements and concealing facts in reports required to be kept under Title I of the Employee Retirement Income Security Act of 1974 (ERISA), and embezzlement of union assets. Counts I through V alleged that each appellant committed mail fraud in violation of 18 U.S.C. § 1341; Counts VI through X alleged that each appellant made false statements in documents required by ERISA in violation of 18 U.S.C. § 1027; and Counts XI through XVI alleged that Vince Kelley embezzled union assets in violation of 18 U.S.C. § 664. The day before trial was scheduled to begin, appellants filed motions to dismiss the indictment alleging selective and vindictive prosecution and requested an evidentiary hearing. The basis for the motions was the discovery of <u>Painters & Allied Trades Local Union No. 1292 v. Loyd Slinkard Painting Co.</u>, No. 1:96CV57 LMB (E.D. Mo.) (<u>Slinkard</u>), a civil ERISA action filed against a contractor by a union to collect union dues and benefits payments allegedly due under a collective bargaining agreement. The district court

-6-

denied the motions to dismiss and for an evidentiary hearing.

The case was tried to a jury. At the close of the case, the district court granted judgment of acquittal in favor of all appellants on the ERISA false statement counts (VI-X) and in favor of Vince Kelley on the union embezzlement counts (XI-XVI). The jury found appellants guilty on the remaining 5 mail fraud counts. The district court sentenced Vince Kelley to 21 months imprisonment, 2 years supervised release, restitution in the amount of $35,000, and a special assessment of $250; Jan Kelley to 15 months imprisonment, 2 years supervised release, restitution in the amount of $30,000, and a special assessment of $250; and PAVCO to 5 years probation, restitution in the amount of $37,683.18, and a special assessment of $1,000. These consolidated appeals followed.

VINDICTIVE OR SELECTIVE PROSECUTION

First, appellants contend that the district court erred in denying their motions to dismiss the indictment for vindictive or selective prosecution. Appellants argue the prosecution was vindictive because Vince Kelley refused to cooperate with the Department of Labor's investigation of the union. They also argue the prosecution was selective because a similarly situated employer was not criminally prosecuted. Appellants also argue the district court erred in failing to hold an evidentiary hearing because they proffered sufficient evidence to raise a reasonable doubt about the propriety of the government's conduct. The district court denied their motions, filed on the day before trial was to begin, as untimely and refused to hold a hearing.

Whether to hold an evidentiary hearing and whether to grant a pre-trial motion to dismiss an indictment are matters within the trial court's discretion. United States v. Aanerud, 893 F.2d 956, 960-61 (8th Cir.) (discovery and hearing on selective

prosecution defense based on tribal membership only if defendant alleges sufficient facts to take the question past the frivolous state and raises reasonable doubt as to prosecutor's purpose), cert. denied, 498 U.S. 822 (1990); United States v. Valona, 834 F.2d 1334, 1340 (7th Cir. 1987) (hearing on outrageous government conduct defense only when defendant presents specific facts sufficient to raise significant doubt about propriety of government action).  The burden of proof of selective or vindictive prosecution is on the defendant.  United States v. Huff, 959 F.2d 731, 735 (8th Cir.), cert. denied, 506 U.S. 855 (1992).

> In order to make out a prima facie case of selective prosecution, the defendants must show:  (1) that they were singled out for prosecution while others similarly situated were not prosecuted for similar conduct; and (2) that the decision to prosecute was based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights.

Id. (citations omitted).  "The defendant's burden is a heavy one, and because we afford broad discretion to prosecuting authorities, we require 'a showing of "intentional and purposeful discrimination."'"  United States v. Matter, 818 F.2d 653, 654-55 (8th Cir. 1987) (citations omitted) (rejecting defense of selective prosecution based on membership in motorcycle club).  This is because "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion."  Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978); e.g., United States v. Jacobs, 4 F.3d 603, 604 (8th Cir. 1993) (per curiam) (retaliatory or vindictive prosecution).

We hold the district court did not abuse its discretion in refusing to hold an evidentiary hearing or in denying their motions to dismiss the indictment for vindictive

and selective prosecution. First, appellants did not raise the defense of vindictive or selective prosecution in a timely manner. The district court ordered that all pre-trial motions be filed for a hearing on September 5, 1996. Appellants filed no pre-trial motions, and thus there was no hearing on any issue. Appellants also failed to allege specific facts sufficient to raise a significant doubt that the government's decision to prosecute was vindictive or retaliatory because Vince Kelley refused to cooperate or selective because the government did not prosecute the <u>Slinkard</u> case. In the district court appellants acknowledged that their claim of vindictive or retaliatory prosecution was insubstantial. Tr. at 13-14. Appellants did not allege that the decision to prosecute them was based on an impermissible motive such as race, religion or an attempt to secure other constitutional rights. In addition, this prosecution and the <u>Slinkard</u> case did not involve similarly situated employers. As noted above, the <u>Slinkard</u> case was a civil ERISA action to collect union dues and payments and involved a subcontractor at the same Procter & Gamble plant. However, there were no allegations that the employer had concealed its employment of non-union workers, had made any false representations about the union status of its employees in order to obtain higher payments from the general contractor or had kept the higher payments, concealing them from its employees and the union.

MOTIONS FOR JUDGMENT OF ACQUITTAL

Next, appellants argue that the district court erred in denying their motions for judgment of acquittal on the mail fraud counts as a matter of law because there was insufficient evidence of the requisite intent to defraud. Appellants argue that they never made any representation that all the PAVCO employees were union employees and that in fact Fru-Con mistakenly assumed that PAVCO employees were union employees because Vince Kelley was the nephew of the head of the union. Appellants also argue that Jan Kelley was only a bookkeeper who mailed

forms to Fru-Con that did not contain false information or misrepresent any material fact.  We disagree.

"[A] motion for a judgment of acquittal should be denied when 'there is substantial evidence justifying an inference of guilt irrespective of any countervailing testimony that may be introduced.'"  United States v. Cunningham, 83 F.3d 218, 222 (8th Cir. 1996), citing United States v. Armstrong, 16 F.3d 289, 292 (8th Cir. 1994).  "The standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly."  United States v. Burks, 934 F.2d 148, 151 (8th Cir. 1991).  "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt."  United States v. Erdman, 953 F.2d 387, 389 (8th Cir.), cert. denied, 505 U.S. 1211 (1992).  "In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict."  Id.

To establish a case of mail fraud, the prosecutor must show the defendant (1) voluntarily and intentionally devised or participated in a scheme to obtain money or property by means of false representations or promises, (2) entered into the scheme with the intent to defraud, (3) knew it was reasonably foreseeable that the mails would be used, and (4) used the mails in furtherance of some essential step in the scheme.  E.g., United States v. Manzer, 69 F.3d 222, 226 (8th Cir. 1995).  It was established at trial that appellants used the mails in furtherance of the scheme and that the use of the mails was reasonably foreseeable.  The existence of a scheme to defraud was also established at trial.  Hence, the question on appeal is the intent to defraud.

Counts I-III covered conduct during the 1991-1993 contract period; counts

IV-V covered conduct during the 1993-1995 contract period. During each contract period, Fru-Con sent out bid forms to subcontractors. PAVCO received a bid form in each period. Vince Kelley completed and signed the bid forms for PAVCO. In the 1991-1993 contract period, the bid form asked appellants to fill out a rate sheet identifying their labor costs. This sheet included a line for union benefits. Appellants knew that non-union employees were not entitled to union benefits. Nonetheless, Vince Kelley filled out this form indicating all PAVCO employees were to be paid union benefits at union rates. Further, the union contacted PAVCO and inquired if PAVCO was affiliated with the union for this contract period. PAVCO assured the union of its affiliation. After receiving this assurance, the union issued a letter to Fru-Con identifying PAVCO as an affiliate. The evidence was sufficient to allow the jury to find beyond a reasonable doubt that appellants acted with the intent to defraud Fru-Con by intentionally misrepresenting the status of PAVCO employees in order to make Fru-Con pay PAVCO moneys to which it was not entitled. See United States v. Duncan, 29 F.3d 448, 450 (8th Cir. 1994); United States v. Costanzo, 4 F.3d 658, 665 (8th Cir. 1993).

For the 1993-1995 contract period, the bid form asked additional questions: whether the bidder was affiliated with any union and, if so, what union. Vince Kelley on behalf of PAVCO filled out the bid form and represented appellants were affiliated with a union, specifically, the CIU. Appellants even signed a Project Agreement with the CIU agreeing to this affiliation, and that agreement became a part of the contract between Fru-Con and PAVCO. In addition, on the rate sheet in the bid package, appellants again requested payment for all their employees at the union wage scale and union benefit rates. At this time appellants knew that most of their employees were non-union and thus were not entitled to union wages or union benefits. The evidence was sufficient to allow the jury to find beyond a reasonable doubt that appellants acted with the intent to defraud Fru-Con. In neither period did

appellants do anything to negate the intent to defraud by simply passing the union benefit monies back to CIU or to its employees.

In her testimony at trial, Jan Kelley admitted that she prepared the billings to Fru-Con for PAVCO by multiplying the labor hours and skill categories provided by Fru-Con by the rates she found on the time sheets Vince Kelley had prepared for the bid package. She acknowledged that the rate sheets showed she was billing Fru-Con for union benefits for all PAVCO employees, even though she knew most of them were not union members and thus not entitled to such benefits. She also admitted that none of the benefits money went to non-union employees, but instead to PAVCO, and that she never brought any of these facts to Fru-Con's attention, even though she knew that Fru-Con had been deceived by the bid rate sheet. The evidence was sufficient to allow the jury to find beyond a reasonable doubt that Jan Kelley acted with the requisite intent to defraud Fru-Con.

We hold that the district court did not err in denying appellants' motions for judgment of acquittal based upon the insufficiency of the evidence of the intent to defraud.

EVIDENCE RELATING TO DISMISSED COUNTS

As noted above, at the close of the case, the district court granted judgment of acquittal in favor of all appellants on the ERISA false statement counts and in favor of Vince Kelley on the union embezzlement counts and instructed the jury accordingly (instruction No. 6). First, appellants argue that the district court erred in refusing to withdraw the evidence related to the dismissed counts. Appellants argue the evidence related to the dismissed counts was too prejudicial, particularly in light of the government's argument that appellants were engaged in a "two-part" scheme that

involved obtaining money from Fru-Con by falsely billing for its employees as union members without passing that money on to those employees or the union. Appellants thus argue the jury may have found them guilty for not filing ERISA reports or for not forwarding union benefits payments rather than for mailing fraudulent documents to Fru-Con. Appellants also argue the district court erred in refusing to instruct the jury not to consider that evidence in its deliberations on the mail fraud counts. The district court refused to so instruct the jury on the ground that the evidence was relevant to the remaining mail fraud counts. Appellants argue the instruction given did not adequately explain to the jury what had happened to the dismissed counts and thus impermissibly allowed the jury to speculate that they may have pleaded guilty to those counts or been found guilty by the district court on those counts.

To sustain what is essentially a challenge to an evidentiary ruling, appellants must prove that the district court abused its discretion and that the improper ruling affected their substantial rights or that the error had more than a slight influence on the verdict. United States v. Darden, 70 F.3d 1507, 1528 (8th Cir. 1995), cert. denied, 517 U.S. 1149 (1996). We hold the district court did not abuse its discretion in refusing to withdraw the evidence related to the dismissed counts. The evidence related to the dismissed ERISA counts and the union embezzlement counts was inextricably intertwined with and was relevant to prove appellants' scheme to defraud Fru-Con through the use of the mails. Appellants obtained money from Fru-Con by misrepresenting their employees as members of a union who were entitled to union-scale wages, union dues and union benefits. In order to obtain those amounts, appellants submitted requests for payments of their labor expenses as if their employees were union members and they were paid on that basis by Fru-Con. Fru-Con paid appellants in reliance on an "affiliation letter" it had received from the union. Thereafter, appellants represented to the union that they were affiliated and the union so informed Fru-Con. Fru-Con required appellants to complete time and material forms

showing their employees' base rate of pay, their union affiliation, if any, and the amount of union dues and benefits payments due. Vince Kelley filled out these forms, and Vince and Jan Kelley prepared and mailed the subcontract receipts affidavits and lien waivers with billing statements to Fru-Con. Jan Kelley prepared most of these documents which represented PAVCO employees as union employees even though she knew few of PAVCO employees were union-affiliated.

In light of our holding on the evidentiary issue, we also hold that the district court did not err in refusing to instruct the jury not to consider the evidence related to the dismissed counts in its deliberations on the mail fraud counts. As discussed above, the evidence related to the dismissed counts was intertwined with and relevant to the overall mail fraud scheme and to the remaining mail fraud counts. The instruction given by the district court was based on 8th Cir. Model Crim. Jury Instructions § 2.11 (1996), and correctly informed the jury that "certain of those charges (referring to all the crimes charged in the indictment) have been disposed of, specifically, the ones dealing with ERISA violations and embezzlement from employee benefit funds," "[t]hose charges are no longer before you, and the only crimes that the defendants are now charged with are the mail fraud counts," and "[y]ou should not guess about or concern yourselves with the reason for this disposition of the other charges. You are not to consider this fact when deciding if the government has proved, beyond a reasonable doubt, the mail fraud counts that remain." Appellants' Appendix at 106 (instruction No. 6).

Accordingly, the judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.