**UNITED STATES of America,**
**Plaintiff,**

v.

**Duane HUBER; Duane Huber, d/b/a Huber Farms General Partnership; and Huber Farms, Inc., Defendants.**

**No. C3–00–76.**

United States District Court,
D. North Dakota,
Southeastern Division.

Feb. 4, 2003.

Bruce D. Quick, C. Nicholas Vogel, M. Daniel Vogel, Vogel Weir Hunke & McCormick Ltd., Fargo, ND, Irvin B. Nodland, Nodland Law Offices, Bismarck, ND, for defendants.

## MEMORANDUM AND ORDER

WEBB, District Judge.

### I. Introduction

On November 27, 2002, a jury returned a verdict finding defendants Duane Huber; Duane Huber, d/b/a Huber Farms General Partnership; and Huber Farms, Inc. guilty of all charges alleged against them in the Second Superseding Indictment. Following this verdict, the jury also determined that $5,876,970 was subject to forfeiture by Duane Huber.

Before this Court is a motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, brought by defendant Duane Huber.[1] (Doc. # 156.) The government resists this motion. (Doc. # 158.) Upon due consideration of the parties' submissions and for the reasons set forth below, the Court DENIES Huber's motion. (Doc. # 156.)

As a basis for his motion, Huber argues that: (1) the Court erroneously denied Duane Huber's request for a continuance, made just prior to the trial; (2) the Court erroneously denied a motion to suppress the testimony of Dawn Rose and financial records that she provided to law enforcement; (3) the evidence was insufficient to establish guilt; (4) co-conspirator statements of Dawn Rose were improperly admitted; (5) the finding of guilty was inconsistent with the evidence; (6) the defendant was the victim of selective prosecution; (7) the Court erroneously denied some of the defendant's requested jury instructions; and (8) the jury's finding with regard to forfeiture was erroneous. Each of these arguments will be addressed below.

### II. Analysis

When considering a motion for a judgment of acquittal under Rule 29, the Court begins with the understanding that it has "very limited latitude." *United States v. Robbins*, 21 F.3d 297, 299 (8th Cir.1994) (citation omitted). This is so because the Court is unable to assess the credibility of witnesses or weigh the evidence. *Id.* Instead, it "must determine whether the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any essential elements of the crime charged." *Id.* (emphasis in original). Defendant thus has a very heavy burden in meeting this standard.

#### A. Denial of Continuance

■ Huber begins by arguing that the Court erred by denying his motion to continue, which was made just nine days prior to the set trial date. This is not a proper basis for a Rule 29 motion. "There is only one ground for a motion for a judgment of acquittal. This is that 'the evidence is insufficient to sustain a conviction' of one or more of the offenses charged in the indictment or information." 2A Charles Alan Wright, Federal Practice and Procedure § 466 at 299 (3d ed.2000) (quoting Fed. R.Crim.P. 29). The proper remedy for complaints about the fairness of a jury trial, other than sufficiency of the evi-

---

1. Duane Huber's attorney also represents defendants Duane Huber, d/b/a Huber Farms General Partnership, and Huber Farms, Inc. Although not entirely clear from the submissions, the Court finds that the motion for judgment of acquittal was brought solely by Duane Huber. The motion for extension of time to file the motion only references Duane Huber, and the brief in support of the motion for judgment of acquittal argues for Duane Huber's acquittal.

dence, is a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, which is much broader in scope than a motion for judgment of acquittal pursuant to Rule 29. Fed. Proc. Forms § 20:833.

Even assuming, however, that Huber's motion was for a new trial, his argument that the Court erred in denying his continuance motion, which was made on the eve of trial, is not supported by case law in this Circuit. In its most recent pronouncement on this issue, the Eighth Circuit held that the trial court did not abuse its discretion when it denied a continuance motion made days before trial where numerous continuances had already been granted, the issues to be resolved were not complicated, and the case had been pending nearly one year. *United States v. Goings*, 313 F.3d 423, 426 (8th Cir.2002).

■ The Court recognizes that, unlike the Goings case, the issues in this case were complicated, and Huber's counsel received additional discovery three weeks prior to trial. However, this case had been pending nearly two years when counsel requested an additional continuance nine days before trial; and the Court had already continued resolution of this case eight times (docs.# 32, # 52, # 66, # 79, # 93, # 94, # 96, # 97). Moreover, the government indicated that the additional discovery material consisted mostly of summaries of earlier disclosed evidence. Under these circumstances, the Court finds that it was entirely proper to require that the trial proceed as scheduled. *Cf. United States v. McHorse*, 179 F.3d 889, 904 (10th Cir.1999) (affirming denial of motion to continue trial more than a half day where the defendant had just received additional discovery material, but continuance motion was made the day of trial and three prior continuances had been granted); *United States v. Lefkowitz*, 125 F.3d 608, 620 (8th Cir.1997) (holding that trial

court did not abuse its discretion in denying motion to continue trial three months where, although trial was complex and records were voluminous, court had already granted two prior continuances and continuance of three weeks was sufficient to prepare for trial).

### B. Denial of Motion to Suppress

Huber also argues that the Court erred in denying his motion to suppress the testimony of Dawn Rose and any evidence that she helped to procure. Dawn Rose worked as Huber's bookkeeper. As such, she had access to his financial records. While Huber was under investigation, Paul Ward, the primary investigator in this case, questioned Rose. She testified that she voluntarily offered to provide Ward with Huber's financial records. Ward explained to her that a subpoena would be forthcoming for Huber's financial records and that he would take the information once he obtained a subpoena.

Rose then gathered financial information on computer diskettes. This information was generated from a computer that she kept in her home that contained identical information to that which was contained in a computer in Huber's office. She presented this information to Ward at one of their subsequent meetings.

In his suppression motion and now, in his motion for judgment of acquittal, Huber claims that: "[T]he government made Dawn Rose its Agent for the purpose of secretly obtaining Mr. Huber's financial records and to avoid the necessity of obtaining a search warrant [in] violation of [the Fourth] Amendment. . . ."

■ It is true, as Huber alleges, that a search or seizure by a private party may implicate the Fourth Amendment if the party is acting as an agent of the government. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614, 109 S.Ct. 1402,

103 L.Ed.2d 639 (1989). If Huber had proved that Ward " 'exercised such coercive power or such significant encouragement that [he was] responsible' for [Rose's] conduct," then he would have prevailed on his theory that Rose was an agent of the government. *United States v. Garlock*, 19 F.3d 441, 443 (8th Cir.1994). He did not prove this, however.

■ Instead, Rose testified that she voluntarily gave records to Ward, and, as the government pointed out in its response to the suppression motion, there usually exist several reasons that compel citizens to cooperate with police such as "the simple but often powerful convention of openness and honesty"; yet, "there is nothing constitutionally suspect in the existence, without more, of [this] incentive[ ] to full disclosure or active cooperation with the police." *Coolidge v. New Hampshire*, 403 U.S. 443, 488, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Huber has not shown the "something more" that is required to establish that Rose was acting as an agent of the government. The Court therefore stands by its ruling at trial to deny Huber's motion to suppress.

## C.  Sufficiency of Evidence

Huber alleges that the evidence presented at trial was insufficient to prove him guilty. Huber gives only one reason for this position: he alleges that the government failed to prove evidence of annual bribes in the amount of $3,000 each to Jeff Greff, Doug Bergan, Chad Bickett, and Jamie Schlecht. In other words, Huber alleges that the government has failed to prove the thirteenth overt act alleged in Count One of the Indictment.[2] Even assuming that the government failed to prove evidence of bribes, this is not fatal to or inconsistent with a finding of guilt. The government need not prove every overt act alleged in the Indictment; in fact, it only needs to prove one. *United States v. Hermes*, 847 F.2d 493, 495–96 (8th Cir. 1988). Since the Court finds that the government has proven at least one other overt act, the Court rejects Huber's argument that the evidence was insufficient to establish guilt.

## D.  Statements of Dawn Rose.

■ Huber asserts that Dawn Rose's testimony contained hearsay that was improperly admitted as a co-conspirator statement. Notwithstanding the fact that Huber never requested that the procedures articulated in *United States v. Bell*, 573 F.2d 1040 (8th Cir.1978), be followed, he seeks to exclude the statements of Rose on the basis that the Court did not explicitly make a final determination at the end of the trial that a conspiracy existed. In order to prevail on this argument, Huber is required to show that he suffered prejudice by the admission of the statements.

---

**2.** It is not clearly delineated in Huber's brief as to which specific "accusations of the indictment are contrary to the evidence the government submitted as proof thereof." (Motion for Judgment of Acquittal.) This is why the Court has chosen not to address this basis for Huber's motion in a separate paragraph above. However, intermingled with his "insufficiency of the evidence" arguments, Huber states that the evidence of bribes is one such accusation not supported by the evidence. As explained above, the Court finds that it does not matter whether or not the government proved evidence of bribes since the government provided sufficient evidence of other overt acts to convict Huber of conspiracy.

Assuming, though, that the government did not prove the evidence of bribes as alleged in the Indictment, the more interesting question is whether the government is required to prove every allegation that is alleged in the Indictment. The Eighth Circuit has found to the contrary. As long as the government proves every element of the offense charged, superfluous allegations may be disregarded. *United States v. Wells,* 127 F.3d 739, 743 (8th Cir.1997).

*United States v. Anderson,* 243 F.3d 478, 483 (8th Cir.2001). He has not done so because the evidence at trial "indicate[d] overwhelming evidence of the existence of a conspiracy and that the relevant statements were made in furtherance of it." *Id.* The Court denies Huber's argument that Rose's co-conspirator statements were inadmissable, and the motion for a judgment of acquittal on this basis is denied.

### E. Evidence of Guilt

■ Huber argues that the finding of guilty was inconsistent with the evidence. As support for this argument, Huber spends a considerable amount of effort attacking the credibility of the government witnesses. Because the determination of witness credibility is within the province of the jury, "[a] trial court has neither the duty nor the authority to grant a motion for acquittal based on the credibility of a witness." *United States v. Kirkie,* 261 F.3d 761, 768 (8th Cir.2001); *accord United States v. Chavez,* 230 F.3d 1089, 1091 (8th Cir.2000) (holding that district court had no authority to grant motion for judgment of acquittal based on defendant's claim that "witnesses had improper interests in testifying, gave testimony that conflicted with that of other witnesses, or were categorically untrustworthy"). The Court rejects Huber's request to enter a judgment of acquittal for the reason that the witnesses were not credible and therefore that the evidence was insufficient to establish guilt.

### F. Selective Prosecution

■ Huber asks that his conviction be overturned because he claims that he was the victim of selective prosecution. Again, this is not a proper basis for a Rule 29 motion because it does not challenge the sufficiency of the evidence. Moreover, even though such motion is properly made prior to trial and prior to the pretrial motions deadline, Huber raises this argument for the first time in his motion for judgment of acquittal. *United States v. Kelley,* 152 F.3d 881, 886 (8th Cir.1998). Nonetheless, the Court will address the substance of this argument.

■ "In order to make out a prima facie case of selective prosecution, the defendant[ ] must show: (1) that [he was] singled out for prosecution while others similarly situated were not prosecuted for similar conduct; and (2) that the decision to prosecute was based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights." *Id.* at 885–86. The defendant bears the burden of proving such a claim, and this burden is heavy because generally the decision of whether or not to prosecute lies entirely within the discretion of the prosecuting authorities. *Id.* at 886. Finally, the defendant is required to point to specific facts that establish "intentional and purposeful" discrimination on the part of the government. *Id.*

■ Huber has failed to meet his burden. Even if Huber could show that others similarly situated were treated differently, and the Court finds that he has not, he has failed to bring forth specific facts that establish that the government intentionally and purposefully treated him differently based upon an impermissible motive such as race, religion or an attempt to secure other constitutional rights. *Id.* The Court denies Huber's argument that he was the victim of selective prosecution.

### G. Rejected Jury Instructions

■ Huber argues that the Court erred in denying three of his requested jury instructions. Once again, this argument does not provide the proper basis for a Rule 29 motion. Nonetheless, the Court will address it. The duty to formulate jury instructions lies within this Court's discretion, and jury instructions will with-

stand the scrutiny of the Eighth Circuit if "as a whole [they] fairly and adequately submitted the issues to the jury." *United States v. Williams*, 308 F.3d 833, 837 (8th Cir.2002).

First, Huber argues that the Court failed to give the following instruction: "The defendants are on trial only for the crimes charged in the Indictment, not for any other activities." (Defendant's Requested Jury Instruction No. 19.) Although the Court did not provide the jury with the exact wording of this instruction, it did provide a virtually identical instruction in the preliminary instructions: "Please remember that only the defendants are on trial here; and that the defendants are only on trial for the crimes charged, not anything else." (Preliminary Instruction No. 3, Province of the Jury.) Therefore, the Court finds that Huber was not harmed by the Court's rejection of his Requested Jury Instruction No. 19.

Huber also challenges the Court's denial of his proposed instruction no. 46, which defined adjusted gross income as "gross income minus the deductions allowed which are attributable to a trade or business carried on by the taxpayer." The Court finds that it properly excluded this instruction for several reasons.

To begin, the definition of "adjusted gross income," as provided by Huber, is incomplete. "Adjusted gross income" ("AGI") is a term of art in income tax preparation. It is arrived at by subtracting certain deductions, such as student loan interest and alimony paid, from "total income." See Form 1040, page 1. "Total income" includes, among other things, wages, interest, dividends, alimony received, capital gains and losses, business income, and farm income. *Id.* Huber's definition of AGI includes some of the components making up "total income." However, since the proposed definition neither includes all of the components of "total income" (i.e. capital losses) nor provides for certain deductions (student loan interest, alimony paid, etc.), it is incomplete. *Id.;* see also 26 U.S.C. § 62.

Huber contends that "adjusted gross income is a term used in the indictment," and that the government continuously referred to simply "gross income" when this term is not referred to in the Indictment. Huber is mistaken.

Count Six specifically refers to "gross income." [3] The term "adjusted gross income" is used once in the five tax counts that charge defendant Duane Huber, but, the one time it is used, it is in conjunction with the term "gross income from farming." "Gross income from farming" refers to the total income from farm income sources before deductions for farm expenses. See Schedule F (Form 1040). While Counts Seven through Ten do not refer to the specific term "gross income," one can infer from their respective contexts that gross income was reported inaccurately because the counts refer to both farm income and farm expenses.

The government's case against Huber did not depend on any calculation of AGI. Instead, the government's allegations in the Indictment and the eventual fruition of those charges in the form of evidence and convictions at trial is that Huber manipulated farm income and expenses on his and others' tax returns so as to conceal the receipt of more than his share of agricultural program payments and crop insurance proceeds. In other words, the government proved that Duane Huber perjured himself on his tax return and caused others to provide false statements

**3.** Count Five, which charges Huber Farms General Partnership, also mentions "gross in-    come."

on their tax returns. Specifically, the government proved that the false statements occurred on the farming schedules (Schedule F) of Duane Huber, Huber Farms General Partnership, Jeff Greff, Douglas Bergan, Chad Bickett, and Steven Huber.

Eventually, as explained above, the false farming income and expense figures on the Schedule F were combined with other income and expenses to arrive at the AGI. However, this eventuality is irrelevant to the proof required for a conviction pursuant to 26 U.S .C. § 7206. For all of these reasons, the Court finds that its exclusion of Huber's proposed jury instruction defining AGI was proper.

Huber finally contends that the Court should have given his Requested Jury Instruction No. 47. This proposed instruction provided: "However, the fact there may have been no tax liability owed by Huber, but rather a loss, as a result of an alleged scam farming operation is relevant to the issue of whether Huber willfully violated 26 U.S.C. § 7206." Huber cites *United States v. Ballard*, 535 F.2d 400 (8th Cir.1976) as support for this instruction. Ballard does not support Huber's instruction; nowhere in the opinion does the Eighth Circuit indicate that a tax loss abrogates willfulness.

██ Although not in the section of his brief relating to jury instructions, Huber argues that "[n]o attempt whatsoever was made to inform the jury of what net, bottom line calculation would be reached if 'income and expense' were considered as the indictment alleges." (Brief in Support of Motion for Judgment of Acquittal at 11–12.) However, the Eighth Circuit Model Jury Instructions explicitly state: "[T]he Government is not required to prove that the defendant owed an additional tax for the years in issue. Whether the Government has or has not suffered a monetary loss as a result of the alleged return in not an element of this offense." This is so because "[s]ection 7206 is a perjury statute that criminalizes lying on any document filed with the IRS. It does not require the prosecution to prove the existence of a tax deficiency, exact amounts of unreported receipts or income, or an intent to evade taxes." *United States v. Tarwater*, 308 F.3d 494, 504 (6th Cir.2002). The Court therefore finds that the government was not required to submit evidence of the "bottom line" and its rejection of Defendants' Proposed Instruction No. 19 was appropriate.

## H. Forfeiture

Huber challenges the jury's finding with regard to forfeiture for several reasons. First, he argues the government erred in presenting "numbers for the year 1999 even though the allegations of the indictment did not allege false income or expenses for that year." (Brief in Support of Motion for Judgment of Acquittal at 10.) This assertion is controverted by the plain language of the Indictment. (See Second Superseding Indictment, Count Eighteen) (stating that the conspiracy began in January 1998 and continued until about March 17, 2000).

██ Second, Huber asserts he made no profit from the sham farms; all of the profits were subsumed by farming and other expenses. He argues that the jury did not take into consideration any expenses in its forfeiture verdict. By this argument, Huber misses a crucial point: if the crop insurance proceeds and agricultural program were illegally obtained, and the jury found that they were, then that ends the inquiry; the taint of the original illegality is not cured by any subsequent, legitimate use of the illegally obtained proceeds.

Third, Huber contends that $400,000 of the amount that made up the forfeiture verdict was money spent by Jeff Greff and

Douglas Bergan for personal reasons, and therefore cannot be subject to forfeiture. It is important to note that the jury did not find that $14,106,213.00 was subject to forfeiture, as requested by the government; instead, they found Duane Huber responsible for $5,876,970.00. Therefore, the Court cannot say with certainty that the forfeiture verdict included $400,000 spent by Greff and Bergan. Moreover, as explained above, the use of agricultural program payments and crop insurance proceeds, once illegally obtained, is irrelevant.

Fourth, Huber contends that any amount of payments received by Steven Huber should not have been considered in the forfeiture determination because the charges against Steven Huber were dismissed. However, the charges against Steven Huber were dismissed because the Court found that he lacked the requisite knowledge and intent. The Court made no finding as to whether the payments received in Steven Huber's name were properly obtained. The jury did, though. The Court can conclude from the evidence presented at trial and by the conviction on Count Ten that the jury found that Duane Huber directed the receipt of farm income and expenses in Steven Huber's name that, in fact, belonged to Duane Huber and Huber Farms General Partnership. The amount received in Steven Huber's name is therefore subject to forfeiture.

III. Conclusion

Viewing the evidence in the light most favorable to the verdict, the Court finds that the evidence was sufficient to sustain the jury's guilty verdicts against Duane Huber as to all counts alleged against him in the Second Superseding Indictment. Accordingly, Huber's motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure is DENIED. (Doc. # 156.)

IT IS SO ORDERED.