# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1181

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Eugene Leathers, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  September 11, 2003

Filed:  January 16, 2004

_____

Before WOLLMAN, BOWMAN, and RILEY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Eugene Leathers appeals his May 15, 2002 conviction of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g) (2000). Leathers argues that his convictions under § 922(g) were constitutionally deficient in that his possession of the firearm and ammunition lacked a sufficient impact on interstate commerce. Leathers also argues that the District Court[1] erred in failing to

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

dismiss his indictment on grounds of double jeopardy, vindictive prosecution, and selective prosecution. We affirm.

On January 18, 1998, Leathers led police officers on a high-speed pursuit after shooting Curtis Ford. Leathers crashed the truck he was driving and fled on foot before being apprehended by police officers. An inventory of the truck turned up three rounds of live ammunition. The firearm used in the shooting was discovered the next morning along the route of the chase. These events took place in Jackson County, Missouri.

In February 1998, Leathers was charged in the circuit court of Jackson County with assault in the first degree and armed criminal action. John Quinn, a private attorney, was appointed as a special prosecutor because of an internal conflict in the Jackson County prosecutor's office. Initially, Catherine Connelly, also a private attorney, was retained to represent Leathers, but she withdrew because of irreconcilable differences with her client. Connelly subsequently accepted employment as an Assistant United States Attorney for the Western District of Missouri. A public defender represented Leathers when the case went to trial in state court on September 25, 2000. The jury found Leathers guilty of second-degree assault and armed criminal action. After receiving the verdict, the trial judge set Leathers's bail at $7,500 pending sentencing. Unhappy with the bail amount, Mr. Quinn stated in court that he would "move things up the street," a reference to instigating a federal prosecution. In either late November or early December of 2000, Quinn delivered Leathers's file to the Bureau of Alcohol, Tobacco, Firearms and Explosives as a referral for federal prosecution. On January 12, 2001, Leathers was sentenced on the state-court convictions and received a sentence of ten years for second-degree assault and a concurrent sentence of three years for armed criminal action.

A federal grand jury initially indicted Leathers on January 16, 2001 charging him with two violations of 18 U.S.C. § 922(g): being a felon in possession of a firearm and being a felon in possession of ammunition. An August 8, 2001 superseding indictment repeated these charges. On May 15, 2003, a jury convicted Leathers on both of the charges and the District Court sentenced him under § 922(e)(1) to concurrent prison terms of 327 months on each count.

I.

Leathers's first claim is that 18 U.S.C. § 922(g) as applied to him is an unconstitutional exercise of Congress's power under the Commerce Clause of the Constitution because his possession of a firearm and ammunition did not have a significant impact on interstate commerce. Recognizing this Circuit's long-standing precedent to the contrary, Leathers nevertheless argues that the Supreme Court's decision in Jones v. United States, 529 U.S. 848 (2000), implicitly overruled the Supreme Court's decision in Scarborough v. United States, 431 U.S. 563 (1977) (holding that the felon-in-possession-of-a-firearm statute only requires a showing that the firearm at one time traveled through interstate commerce) and requires us to revisit the issue. We already have repeatedly rejected this argument, see United States v. Gary, 341 F.3d 829, 835 (8th Cir. 2003); United States v. Shepherd, 284 F.3d 965, 969 (8th Cir. 2002), and this panel, as distinguished from the court en banc, is not at liberty to revisit this issue. See United States v. Wilson, 315 F.3d 972, 973–74 (8th Cir.), cert. denied, 123 S. Ct. 2661(2003). In accordance with our prior decisions, inasmuch as Leathers's firearm and ammunition were produced out-of-state and traveled to Missouri through interstate commerce, the jurisdictional requirement of § 922(g) is satisfied. We thus reject Leathers's interstate-commerce challenge to his prosecution under § 922(g).

## II.

Next, Leathers argues that his subsequent federal prosecution violated his rights under the Double Jeopardy Clause of the Fifth Amendment. Acknowledging the vitality of the dual-sovereignty doctrine, Leathers nevertheless argues that the subsequent federal prosecution falls into an exception to the dual-sovereignty doctrine laid out in the dicta of Bartkus v. Illinois, 359 U.S. 121, 123–24 (1959). Our review of a district court's double jeopardy determination is de novo. United States v. Johnson, 169 F.3d 1092, 1095 (8th Cir.), cert. denied, 528 U.S. 857 (1999).

"The dual sovereignty doctrine provides that although a defendant may not be prosecuted twice by the same sovereign for the same acts, a subsequent prosecution by a separate sovereign does not violate the Constitution." Johnson, 169 F.3d at 1096. The State of Missouri and the United States are separate sovereigns in our federal system and for purposes of the Double Jeopardy Clause. Accordingly, Leathers's prosecution by the United States after he already had been prosecuted by the State of Missouri for the same acts was constitutionally permissible unless the Bartkus exception applies. The Bartkus court, in dicta, suggested that a subsequent state prosecution that is a "sham and cover" may violate the Double Jeopardy Clause if the state prosecutors were merely the "tools" of the federal government; i.e., if the state prosecution was de facto a second federal prosecution. See Bartkus, 359 U.S. at 123–24 (quoted in United States v. Williams, 104 F.3d 213, 216 (8th Cir. 1997)). While the dicta in Bartkus addresses a subsequent state prosecution, in this case the federal prosecution was subsequent to the state prosecution. We have never explicitly held that the Bartkus exception applies to subsequent federal prosecutions. See United States v. Basile, 109 F.3d 1304, 1307 (8th Cir.), cert. denied, 522 U.S. 873 (1997). Even if we were to assume without deciding that the Bartkus dicta could apply to subsequent federal prosecutions, the facts of this case fall far short of establishing that the federal prosecution of Leathers was a "sham and cover" within the meaning of Bartkus.

-4-

Leathers points to three different instances of contact between state and federal prosecutors to support his contention that the federal prosecution was merely a de facto state prosecution. First, he argues that the state prosecutor's referral of the matter to federal prosecutors was the direct cause of the federal prosecution. Thus he argues that because his federal prosecution would never have occurred but for Mr. Quinn's referral, the federal prosecutors were not acting independently. This position is unavailing. A causal connection such as the one shown here does not make a subsequent federal prosecution a "sham and cover" for a state prosecution. Referrals and cooperation between federal and state officials not only do not offend the Constitution but are commonplace and welcome. See Bartkus, 359 U.S. at 123 (describing state and federal cooperation as the standard practice); United States v. Talley, 16 F.3d 972, 974 (8th Cir. 1994).[2] A referral made by a state prosecutor does not undermine the independence of federal prosecutors, regardless of the state prosecutor's motives in making the referral. The inquiry is not whether the prosecution would have taken place but for the referral, but rather whether the state has "effectively manipulated the actions of the federal government, so that the federal officials retained little or no independent volition." United States v. 38 Whalers Cove Drive, 954 F.2d 29, 38 (2d Cir.), cert. denied, 506 U.S. 815 (1992).

This brings us to the second of the circumstances relied upon by Leathers in support of his argument for application of the Bartkus exception. In the course of

---

[2]Mr. Quinn referred Leathers's case to a program titled Project Felon. Project Felon is an initiative in the United States Attorney's offices in the Western District of Missouri and the District of Kansas designed to facilitate cooperation between federal and state officials to increase the prosecution of felons who possess firearms in the Kansas City area. See Press Release, Office of the United States Attorney for the Western District of Missouri, Stephen L. Hill, Jr., "Project Felon" Initiative Against Gun Crime Proves Successful in Less than Six Months; Gov. Carnahan Assigns New State Resources to Efforts (Mar 21, 2000), available at URL http://www.atf.gov/field/kansascity/press_releases/032100proj_felon.htm.

investigating whether or not to initiate a federal prosecution of Leathers, Assistant United States Attorney Charles Ambrose phoned Mr. Quinn. During this telephone conversation Mr. Quinn speculated that Leathers would only receive a sentence of two and a half years on the state convictions. Leathers argues that Mr. Quinn's inaccurate estimate of the length of the state sentence improperly influenced the federal prosecutor. It is difficult to imagine how speculation as to the length of a state sentence could improperly influence a federal prosecutor's independent assessment of a case as a candidate for federal prosecution. In any event, because Leathers was sentenced to ten years on the state convictions prior to his indictment by a federal grand jury, any underestimate by Mr. Quinn became irrelevant.

Third, Leathers argues that Ms. Connelly's presence in the United States Attorney's office for the Western District of Missouri created a conflict of interest that undermined the federal prosecutor's independence. The Bartkus exception only applies when a sovereign improperly influences another sovereign. Even if we were to assume that Ms. Connelly's difficulties with Leathers affected the decision to prosecute Leathers under federal law (an assumption that is unsupported by any evidence), the prosecution would not fall within the exception because Ms. Connelly did not represent Missouri's interests either from her previous position as defense counsel or from her post in the United States Attorney's office. Furthermore, an ethical wall[3] separated Ms. Connelly from the Leathers case, and the United States Attorney's Office for the District of Kansas handled the prosecution, thereby undermining any claim of undue influence resulting from Ms. Connelly's presence in the United States Attorney's office for the Western District of Missouri. See also infra at 8.

---

[3]Otherwise known as a "Chinese Wall." See Black's Law Dictionary 573 (7th ed. 1999).

In sum, nothing in the record suggests that the federal prosecutors were anything but independent; thus the dual-sovereignty doctrine applies. Leathers's right to be free from being placed in jeopardy twice was not violated by his subsequent federal prosecution for the same acts.

III.

Leathers also contends that his federal prosecution is an example of vindictive prosecution that violates his due-process rights under the Fifth Amendment. A prosecution designed solely to punish a defendant for exercising a valid legal right violates due process. See Blackledge v. Perry, 417 U.S. 21, 25-26 (1974); United States v. Graham, 323 F.3d 603, 606 (8th Cir.), cert. denied, 124 S. Ct. 235 (2003). It is the defendant's burden to show that the prosecution was brought in order to punish the defendant for the exercise of a legal right. See United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001), cert. denied, 535 U.S. 1008 (2002). A vindictive or improper motive may be proved either by direct or circumstantial evidence. See United States v. Beede, 974 F.2d 948, 951 (8th Cir. 1992), cert. denied, 506 U.S. 1067 (1993). The defendant's evidentiary burden is a heavy one, and we are mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes. See United States v. Kelley, 152 F.3d 881, 885–86 (8th Cir. 1998).

The District Court found that Leathers had not made a sufficient showing of impermissible motive. Because a finding of vindictiveness vel non can only be made on the basis of evidence pertaining to the prosecutor's motives, we treat the question as one of fact and thus review the District Court's ruling for clear error. See United States v Parham, 16 F.3d 844, 846 (8th Cir. 1994).[4]

_____

[4]We realize that there has been some confusion as to the proper standard of appellate review of district court determinations of vindictive prosecution. Compare

Leathers focuses much of his brief on detailing the evidence that shows that Mr. Quinn, the state prosecutor, referred the matter for federal prosecution because he was dissatisfied with the bail-bond amount set in the state court. Leathers fails, however to make a showing that Mr. Quinn's motives can somehow be attributed to the federal prosecutors in this case. Leathers attempts to use as a basis for inferring an improper motive the phone conversation between Mr. Quinn and Assistant United States Attorney Ambrose in which Mr. Quinn speculated that Leathers would receive a light sentence on his state convictions. However, we have repeatedly stated that a defendant may be subject to a harsher sentence in federal court than the sentence he would receive in state court on charges based on the same conduct without implicating his due-process rights. See Beede, 974 F.2d at 952 (citing United States v. Turpin, 920 F.2d 1377, 1388 (8th Cir. 1990), cert. denied, 499 U.S. 953 (1991)). Leathers simply has not come forward with any evidence that the federal prosecutors were actuated by any impermissible motive.

Again, Leathers attempts to use the presence of Ms. Connelly in the United States Attorney's office for the Western District of Missouri as evidence of impropriety, this time to prove vindictiveness. As we previously noted, there has been no showing that Ms. Connelly's presence had any effect on the federal prosecutors' decision to seek an indictment against Leathers. Nothing more need be said about this meritless point.

------

Kriens, 270 F.3d at 603 (reviewing de novo a denial of a motion to dismiss an indictment on vindictive prosecution grounds); Kelley, 152 F.3d at 885 (using an abuse-of-discretion standard in reviewing a trial court's decision not to hold an evidentiary hearing on a claim of vindictive prosecution). However, we agree with Parham that vindictiveness vel non is a question of fact and that the trial court's determination should be subject to appellate review under the clear-error standard.

Leathers further argues that an improper motive may be ascribed to the federal prosecutors because the decision to seek the Attorney General's authorization for a waiver of the Petite policy[5] was made in the Western District of Missouri by colleagues of Ms. Connelly. Not only is there no evidence that would allow us to infer that Ms. Connelly's presence affected the decision to seek the Petite waiver, but this Court has previously declined to examine the application of the Petite policy for evidence of vindictive prosecution. See Basile, 109 F.3d at 1308. The Petite policy is a discretionary policy of the Department of Justice. It does not confer any substantive rights and its application cannot form the basis for a claim of improper prosecution. See Kreins, 270 F.3d at 603; United States v. Lester, 992 F.2d 174, 176 (8th Cir. 1993). Leathers's argument on this point lacks merit.

For the reasons already stated for rejecting Leathers's other arguments, we reject Leathers's argument that the circumstances of the case give rise to a presumption of vindictiveness. There being no evidence of improper motive on the part of any of the federal prosecutors in pursuing federal charges against Leathers, the vindictive prosecution claim must fail.

IV.

Leathers also claims that his prosecution was selective and thus violated his equal-protection rights under the Due Process Clause of the Fifth Amendment. In order to prevail on a claim of selective prosecution a defendant must show "1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling

---

[5]The Petite policy is an internal Department of Justice policy that prohibits a federal prosecution of a defendant who has been convicted in state court for the same conduct unless the subsequent federal prosecution is specifically authorized by the Attorney General. This policy was named after the Supreme Court case that first described it. See Petite v. United States, 361 U.S. 529 (1960) (per curiam).

him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights." Parham, 16 F.3d at 846.

Leathers points to the testimony of a federal prosecutor and a federal ATF agent to support his argument that he was singled out for prosecution. Prosecutor Ambrose and agent Getty both testified that they could not recall another instance of federal prosecution on firearm charges after a defendant had been prosecuted and convicted in state court for the same conduct. Despite the recollections of prosecutor Ambrose and agent Getty, there have been past federal prosecutions of defendants previously convicted in state court for offenses that involved the use of firearms. See e.g., United States v. Garner, 32 F.3d 1305 (8th Cir. 1994), cert. denied, 514 U.S. 1020 (1995); United States v. Talley, 16 F.3d 972 (8th Cir. 1994). Leathers's argument that others similarly situated have not been federally prosecuted is factually incorrect. He thus fails the first part of the Parham test.

Because Leathers fails the first part of the Parham test, and both parts of the test must be satisfied if a defendant is to prevail on a claim of selective prosecution, we need not discuss the second part of the test. We do so only for the sake of completeness. The second part of the Parham inquiry requires a showing of a constitutionally impermissible motive prompting the prosecution, such as racial or religious bias or the defendant's exercise of a constitutional right. Here, as with the vindictive prosecution claim, Leathers failed to show a constitutionally impermissible motive for his federal prosecution. His claim therefore also fails the second part of the Parham test. Leathers's claim of selective prosecution in violation of the Due Process Clause must be, and is, rejected.

For the reasons stated, we affirm the judgment of the District Court.

_____