# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1046

_____

United States of America,

  Plaintiff - Appellee,

v.

Altedias Maurice Campbell,

  Defendant - Appellant.

     \*
     \*
     \*
     \* Appeal from the United States
     \* District Court for the Northern
     \* District of Iowa.
     \*
     \*
     \*

_____

Submitted: June 18, 2004
Filed: June 8, 2005

_____

Before BYE, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Altedias Campbell appeals his conviction of one count of possession with intent to distribute 1.66 grams of crack cocaine and one count of distribution of .34 grams of crack cocaine within 1,000 feet of a school and his sentence of 300 months' imprisonment. This appeal is from the second trial after Campbell had originally been indicted and convicted only on the count for possession with intent to distribute and sentenced to 104 months' imprisonment. Now, following the second trial, he

argues that the district court[1] should have dismissed the distribution count of the superseding indictment, as it was the result of vindictive prosecution meant to punish him for his successful new trial motion following his first trial.  Campbell also argues that the district court erred in refusing to either compel testimony by or grant immunity to a witness, failing to grant a judgment of acquittal or a new trial, sentencing him as a career offender, and finding that he obstructed justice.  We affirm.

The original count charged Campbell with possession with intent to distribute crack cocaine.  Police arrested Campbell for driving with a suspended license and for operating a vehicle while intoxicated.  After the arrest, officers searched the vehicle and found thirteen rocks of crack cocaine under the driver's seat.  Following his conviction of this count in the first trial, he  filed a motion for judgment of acquittal and/or motion for new trial.  The district court denied the motion and sentenced Campbell to 104 months.  Campbell appealed.  While the appeal was pending, Campbell filed another trial motion with the district court based upon newly discovered evidence and concomitantly filed in this Court a motion to remand.  We entered an order staying the proceedings and directing the district court to consider the motion.

Following a hearing, the district court entered an order certifying to this Court that Campbell's new trial motion should be granted.  We dismissed the appeal.  Approximately three months after the court granted Campbell's new trial motion, the government filed a superseding indictment that added an additional count for distribution of crack cocaine within 1,000 feet of a school.  Police testified that Sherard Allen approached them, unaware they were police officers, and attempted to sell them drugs.  Allen himself had no drugs but, after driving around with the officers, he eventually located a seller, who was later identified as Campbell.  Allen

---

[1]The Honorable Linda R. Reade, United States Judge for the Northern District of Iowa.

approached Campbell's vehicle, brought crack cocaine back to the officers, and returned to Campbell's vehicle with the officers' money.

The jury convicted Campbell on both counts. Once again, he filed motions for a judgment of acquittal and/or for new trial. The district court denied the motions and sentenced Campbell to 300 months. This appeal followed.

## I.

Campbell argues that the district court should have granted his motion to dismiss the new count in the government's superseding indictment on the basis of prosecutorial vindictiveness. He claims the government added the new count in the superseding indictment to punish him for his successful new trial motion.

Although the government may take action to punish a defendant for committing a crime, punishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness. United States v. Goodwin, 457 U.S. 368, 372 (1982). A defendant can establish prosecutorial vindictiveness through objective evidence that the prosecutor's decision to seek a more severe sentence was intended to punish the defendant for the exercise of a legal right. United States v. Rodgers, 18 F.3d 1425, 1429 (8th Cir. 1994). Alternatively, the defendant is entitled to a presumption of vindictiveness where there exists a reasonable likelihood of vindictiveness, which may arise when prosecutors increase the number or severity of charges. Id. at 1429-30 (quoting Goodwin, 457 U.S. at 373); United States v. Punelli, 892 F.2d 1364, 1371 (8th Cir. 1990). There is a split within the Eighth Circuit as to the correct standard of review to apply to a district court's decision on a motion to dismiss a charge for prosecutorial vindictiveness.[2] Campbell cannot succeed under any of these standards.

---

[2]See United States v. Hirsch, 360 F.3d 860, 863 (8th Cir. 2004) (reviewing for abuse of discretion); United States v. Leathers, 354 F.3d 955, 962 n.4 (8th Cir.), cert. denied, 125 S. Ct. 285 (2004) (acknowledging "confusion as to the proper standard,"

It is the defendant's burden to show that the prosecution was brought in order to punish the defendant for the exercise of a legal right. Leathers, 354 F.3d 955, 961 (8th Cir.), cert. denied, 125 S. Ct. 285 (2004). The burden is a heavy one, and we recognize the broad discretion given to prosecutors in enforcing criminal statutes. Id. Campbell is not able to meet this burden. The district court found no objective evidence of a vindictive motive or facts that created a presumption of vindictiveness. As objective evidence[3] that the government attempted to punish him for seeking a new trial, Campbell points to the government's opposition to his new trial motion and its decision to indict him on an additional count after the new trial was granted. This evidence does not rise to the level of objective evidence of prosecutorial vindictiveness.

An example of objective evidence of a vindictive motive would be a prosecutor's statement that he or she is bringing a new charge in order to dissuade the defendant from exercising his or her legal rights. See, e.g., Goodwin, 457 U.S. at 381. Campbell presents no such evidence here. Neither the prosecution's opposition to a new trial nor its delay in filing the superseding indictment objectively shows a vindictive motive to punish Campbell for seeking a new trial.

Campbell argues that, even if there is no objective evidence of vindictiveness, evidence exists sufficient to support a presumption of vindictiveness. The district court concluded that no presumption of vindictiveness was warranted. Only in "rare

---

and reviewing for clear error); United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001) (applying de novo review); United States v. Kelley, 152 F.3d 881, 885 (8th Cir. 1998) (reviewing for abuse of discretion).

[3]At one point in the record, Campbell's counsel made a statement suggesting that they did not have any objective evidence of prosecutorial vindictiveness. However, a few minutes later and again in Campbell's brief, she argued that objective evidence did exist. We assume the argument was preserved, and we hold that the evidence Campbell offers does not objectively show prosecutorial vindictiveness.

instances" does the presumption apply. United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001) (no presumption where federal government prosecuted defendant after he refused to plead guilty in state court). A presumption does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness. Goodwin, 457 U.S. at 373, 375.

There can be no prosecutorial vindictiveness if the prosecutor revised the charge because of newly discovered evidence or some objective reason other than to punish the defendant for exercising his legal rights. Rodgers, 18 F.3d at 1430 (citations omitted). We have not interpreted "newly discovered evidence" to literally require the evidence to surface *after* the first trial. This Court specifically rejected a vindictiveness claim where evidence supporting the additional count was discovered either shortly before or just after trial. Id. at 1431. Even if the circumstances in this case presented a reasonable likelihood of vindictiveness, the government's explanation rebuts the presumption.

The government learned of the evidence supporting the additional charge less than one week before the scheduled trial, too late to supersede the indictment before the first trial. Evidence of Campbell's distribution of crack cocaine was admitted over his objection in the first trial under Federal Rule of Evidence 404(b). The drug quantity from that incident was included in the Presentence Investigation Report as relevant conduct and the district court relied on that quantity to increase Campbell's base offense level. As a result, Campbell's sentence was increased due to the distribution evidence. The government's motive to "punish" Campbell by indicting him on the distribution of crack cocaine is dubious, because the district court had already used the evidence to increase Campbell's sentence after the first trial. Moreover, Campbell appealed the admission of the distribution evidence under Rule 404(b) in the first trial. By superseding the indictment instead of offering the

distribution evidence again under Rule 404(b), the government avoided the risk that the evidence might be excluded either at trial or on appeal.

The record is devoid of objective evidence of prosecutorial vindictiveness and, if any presumption of vindictiveness arose, it was rebutted by the government. The district court did not err in denying Campbell's motion to dismiss based on prosecutorial vindictiveness.

## II.

Campbell argues the district court erred by failing to grant immunity to or compel testimony by Sherard Allen. During the government's case in chief, a police sergeant testified that Allen acted as an intermediary in Campbell's sale of crack cocaine to government agents. He and another officer testified that through Allen they bought .34 grams of crack cocaine from Campbell. Campbell subpoenaed Allen to testify during the defense case, but he asserted his Fifth Amendment right and declined to testify. The government did not offer immunity to Allen. At the court's suggestion, the parties were able to agree on a two-sentence stipulation as to what Allen's testimony would have been, in part. When Allen refused to testify, Campbell was permitted to make an offer of proof. Counsel stated that she expected Allen to testify that he was not familiar with Campbell, would not recognize Campbell, and that the police had prompted him to identify Campbell by using Campbell's brother's name.

The power to grant immunity is vested in the prosecutor, who has "broad discretion" in deciding whether to grant immunity. United States v. Washington, 318 F.3d 845, 855 (8th Cir. 2003). The defendant must make a "substantial evidentiary showing" that the government intended to distort the judicial fact-finding process. Id. We will not review a prosecutor's decision unless it amounts to a "clear abuse of discretion" which violates due process. Id.

Campbell claims he made a substantial showing that the government intended to distort the fact-finding process, but he presented no such evidence. He argues on appeal that prosecutors often offer immunity to witnesses, but that the prosecutor in his case refused to offer immunity to Allen. In Washington, this Court rejected the notion that the mere failure to grant immunity to a defense witness, even if coupled with a grant of immunity to a prosecution witness, created a substantial showing that the government intended to distort the fact-finding process. Id. The example of a substantial showing set forth in Washington is a situation where the government or court makes repeated threats or warnings to defense witnesses. Id. The record contains no evidence to support a finding that the prosecutor or the district court made any sort of threats or warnings to Allen. Because Campbell made no evidentiary showing and the record reveals no prosecutorial abuse of discretion, no error occurred.

Campbell asserts in a conclusory statement that the district court erred in refusing to compel Allen's testimony. We review the district court's decision to permit a witness to invoke his or her Fifth Amendment privilege for abuse of discretion. Washington, 381 F.3d at 856. The district court is to review the potential testimony outside the hearing of the jury and order the witness to answer only if it is "perfectly clear" that the answer "cannot possibly" tend to incriminate the witness. Id. (citation omitted). Without the jury present, the district court and counsel discussed at length the anticipated testimony. The district court appointed an attorney for Allen, who asserted the privilege and listed three potential areas of incrimination if Allen were to testify.

Allen refused to testify because his testimony could have subjected him to prosecution for making false statements or for perjury. Allen gave statements to Waterloo police, the U.S. Attorney's office, his parole officer, and a defense investigator. At least one inconsistency from among those statements appears in the record. The government had already introduced the police officers' testimony that

Allen volunteered that "Gushy's brother" (Campbell) sold him the drugs. In his statement to the defense investigator, Allen said that the police had supplied Gushy's name, which prompted Allen to agree that Gushy's brother sold him the drugs so the police would leave him alone. In addition, Allen already had been prosecuted in state court on drug charges and his attorney feared he could be subject to federal charges if he discussed the drug sale at Campbell's trial. Given Allen's apparently inconsistent statements and his fear of federal drug charges, the district court did not abuse its discretion in refusing to compel Allen's testimony.

In addition, Campbell argues on appeal that the district court should have granted "judicial immunity" to Allen. Judicial immunity is a concept that comes from case law holding that a court has inherent authority to grant use immunity to witnesses, in the absence of a government request, to secure essential exculpatory testimony. United States v. Robaina, 39 F.3d 858, 863 n.3 (8th Cir. 1994). This Court has consistently refused to recognize the concept of judicial immunity. Washington, 318 F.3d at 856; United States v. Bowling, 239 F.3d 973, 976 (8th Cir. 2001); United States v. Ayers, 138 F.3d 360, 363 (8th Cir. 1998); Robaina, 39 F.3d at 863. We acknowledged in United States v. Kehoe, 310 F.3d 579, 591 (8th Cir. 2002), that if we were to recognize judicial immunity, it should only be granted as an "extraordinary remedy." The record in this case reveals no justification for an extraordinary remedy because the colloquy between counsel suggested that Allen remembered almost nothing about the drug sale and apparently made inconsistent statements.

The district court did not err with respect to the testimony of Sherard Allen.

## III.

Campbell argues that the district court erred in denying his motion for judgment of acquittal and motion for new trial. Campbell argues that someone else

borrowed his vehicle and sold the drugs to Sherard Allen that were attributed to Campbell in count one. He argues that the drugs from count two belonged to Roger Sandifer, the person whose car Campbell was borrowing at the time police stopped him and discovered the drugs.

In reviewing de novo a district court's denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the verdict and give the government the benefit of all reasonable inferences. United States v. Nambo-Barajas, 338 F.3d 956, 960 (8th Cir. 2003) (citations omitted). "Reversal is appropriate only where a reasonable jury could not have found all the elements of the offense beyond a reasonable doubt." Id. (citations omitted).

We review a district court's denial of a motion for new trial for abuse of discretion. Id. at 961. An abuse of discretion occurs when the court fails to consider a relevant factor that deserves significant weight, when it gives an irrelevant factor significant weight, or when the court commits a clear error in weighing the relevant factors. Id. Reviewing Campbell's claims under the more stringent standard of review for denial of a motion for acquittal, Campbell cannot prevail.

The original count, count two, charged Campbell with possession with intent to distribute approximately 1.66 grams of crack cocaine. Police stopped Campbell for a traffic violation while he was driving a car he borrowed from Roger Sandifer. When one of the officers approached the car, Campbell was leaning over the driver's seat with his hands between his legs. Campbell quickly sat up when the officer shined his flashlight at him. Police arrested Campbell for driving with a suspended license and for operating a vehicle while intoxicated. Following his arrest, they searched the car.

The officers found thirteen rocks under the driver's seat, where Campbell's hands had been. A lab report verified the rocks were crack cocaine. The drugs were

packaged in clean plastic bags, but the rest of the car was dirty, which suggested that the drugs were recently placed under the seat. From the clean bags and from Campbell's hand placement near the drugs, the jury could reasonably infer that the drugs belonged to Campbell or were in his possession. The government presented testimony that the amount of cash found on Campbell, the number and size of the crack cocaine rocks, and the absence of other drug paraphernalia or a crack pipe were characteristic of a drug dealer, not a drug user.

The new count, count one, was for distribution of .34 grams of crack cocaine within 1,000 feet of a school. Sherard Allen approached police in an attempt to sell them crack cocaine. Allen and the officers drove around together looking for a seller. After they parked the car, Campbell parked his Chevy Blazer parallel to them. The officers knew and recognized Campbell. Allen walked over to Campbell's Blazer and returned to hand one of the officers three rocks of crack cocaine. In exchange for the drugs, the officer gave Allen fifty dollars, which Allen handed over to Campbell through the window of the Blazer. Allen returned to the officers' car to request his fee, in drugs or money, for negotiating the sale. After the drug sale, Campbell's cousin recognized the officers and shouted a warning that police were in the neighborhood.

A lab report confirmed the rocks were crack cocaine. A map verified that the sale was within 1,000 feet of Longfellow School. Allen later told police he obtained the drugs from "Gushy's brother." "Gushy" is the nickname of Campbell's brother. Police searched Campbell's Blazer later that day but found no drugs and none of the marked bills the officers gave Allen. A reasonable inference from the evidence is that Campbell removed from his car any drugs or drug money after he heard his cousin's warning.

The district court did not err in denying Campbell's motion for judgment of acquittal because, viewing the evidence in the light most favorable to the government,

we conclude that a reasonable jury could have found all elements of the offenses beyond a reasonable doubt. Likewise, the district court did not abuse its discretion in denying Campbell's motion for new trial.

## IV.

Campbell argues that the district court erred in ruling that his prior burglary conviction was a crime of violence[4] for purposes of the career offender guidelines. Iowa defines burglary, generally, as:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

Iowa Code § 713.1. The district court determined that Campbell had pleaded guilty in Iowa state court to subsection two of the second-degree burglary statute, which defines the crime as:

> (2) While perpetrating a burglary in or upon an occupied structure in which one or more persons are present, the person does not have possession of an explosive or incendiary device or material, nor a dangerous weapon, and no bodily injury is caused to any person.

Iowa Code § 713.5(2).

---

[4]The district court's finding, based upon the fact of a prior conviction, does not trigger issues raised in United States v. Booker, 125 S. Ct. 738, 756 (2005), and Campbell has not alleged any Booker error. See United States v. Little Dog, 398 F.3d 1032, 1039 (8th Cir. 2005).

When the district court sentenced Campbell after the first trial, it found that the prior burglary conviction did not qualify as a "crime of violence" for purposes of the career offender guidelines. When the court sentenced Campbell after the second trial, it concluded that the burglary did qualify as a crime of violence under more recent Eighth Circuit case law. The district court concluded that "any burglary of an occupied motor vehicle which constitutes a violation of Iowa Code Section 713.5(2) is by its nature the type of offense that presents a serious potential risk of physical injury to another."

We review the district court's findings of fact for clear error and its application of the sentencing guidelines de novo. United States v. Sun Bear, 307 F.3d 747, 750 (8th Cir. 2002).

The sentencing guidelines include in the definition of "crime of violence" a felony that:

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a)(2) (2003).

In determining whether an offense is a "crime of violence," the guidelines instruct us to look at "the conduct set forth (i.e., expressly charged) in the count." U.S.S.G. § 4B1.2, comment. (n.1). Thus, we are permitted to look at the nature of the conduct with which the defendant has been expressly charged to help determine whether that conduct presents a "serious potential risk of physical injury." U.S.S.G. § 4B1.2(a)(2); Sun Bear, 307 F.3d at 752. We review by employing a "categorical approach," which means that we examine the nature of the expressly charged conduct, rather than the particulars of the defendant's behavior. See United States v. Nation, 243 F.3d 467, 472 (8th Cir. 2001).

In the charging document filed in Iowa state court, the second-degree burglary count brought against Campbell was described as:

> [H]aving the intent to commit an assault therein and who, having no right, license, or privilege to do so, break an occupied structure, to-wit: The car occupied by Dornetha Harper, such occupied structure not being open to the public and occupied by Harper at the time or remain therein after his right, license, or privilege to do so had expired. Contrary to and in violation of § 713.1 and § 713.5 of the Iowa Criminal Code.

Campbell pleaded guilty to the charge on March 20, 1993.

Although we have not directly addressed whether burglary of a vehicle constitutes a crime of violence under section 4B1.2(a)(2), we have addressed comparable offenses. We have held that attempted theft of a vehicle and burglary of commercial property are crimes of violence because they present a serious potential risk of physical injury. See Sun Bear, 307 F.3d at 752; United States v. Peltier, 276 F.3d 1003, 1006 (8th Cir. 2002). We have also said that even a "walkaway" escape presents a serious potential risk of physical injury because it is "a powder keg, which may or may not explode into violence and result in physical injury . . . but which always has the serious potential to do so." Nation, 243 F.3d at 472 (quoting United States v. Gosling, 39 F.3d 1140, 1142 (10th Cir. 1994)).

Campbell was charged with and pleaded guilty to breaking into an occupied car with the intent to commit an assault inside that car. The nature of that conduct presents a serious potential risk of physical injury. A car is a relatively small enclosed space, and two people inside the same car are in close physical proximity to each other. If one person enters the car intending to assault the other person, as Campbell did, there is a likelihood that a physical confrontation will occur. Breaking into someone's car with the plan of assaulting the occupant may not always result in violence and injury, but there is at least as much a risk of violence and physical injury as in the crime of escape, theft of a vehicle, or burglary of a commercial building.

-13-

Based upon the language of the charging document and Campbell's plea of guilty, we hold that the district court did not err in concluding that Campbell's second-degree burglary conviction was a prior felony crime of violence for purposes of U.S.S.G. § 4B1.2(a)(2).

Campbell also argues that, in sentencing him after the second trial, the district court was bound by the finding from the first sentencing that his prior conviction was not a crime of violence. Campbell's argument is two-part: that the district court was vindictively motivated and that it was error for the court to revisit its factual findings.

At the first sentencing, Judge Melloy recognized that whether the burglary conviction was a crime of violence was a close question and reasonable minds could reach different results. Judge Reade sentenced Campbell after the second conviction and explained that her decision was based upon case law that had been decided after the first sentencing. In that time, this Circuit decided Sun Bear, which held that theft of a vehicle is a crime of violence. 307 F.3d at 753.

In support of his argument of a vindictive district court motive, Campbell cites North Carolina v. Pearce, 395 U.S. 711 (1969), overruled in part, Alabama v. Smith, 490 U.S. 794 (1989). The rule announced in Pearce requires the district court to explain its reasons for imposing a more severe sentence upon a defendant after a new trial. Pearce, 395 U.S. at 726. In Smith, the Supreme Court clarified that the Pearce rule applies only to situations "in which there is a 'reasonable likelihood' . . . that the increase in sentence is the product of actual vindictiveness." 490 U.S. at 799 (quoting United States v. Goodwin, 457 U.S. 368, 373 (1982)). Here, there is no reason to suspect the district court meant to punish Campbell for obtaining a new trial. In contrast, the sentencing judge recommended the new trial. In addition, a different judge resentenced Campbell, and she thus had no personal stake in Campbell's original sentence. Even if the rule in Pearce applied, Judge Reade gave the required

-14-

explanation for her divergence from the original sentencing, that her legal interpretation was based upon case law decided after the first sentencing.

Campbell's second argument, that the district court erred in revisiting its factual findings, is also unpersuasive. Whether a prior conviction is a crime of violence is a legal, not factual, determination. See United States v. Marcussen, 403 F.3d 982, 984 (8th Cir. 2005). Generally, when the court grants a new trial at the defendant's request, "the original conviction has . . . been wholly nullified and the slate wiped clean." Pearce, 395 U.S. at 721. Campbell provides no authority that suggests that Judge Reade was bound by the previous court's legal interpretation of the sentencing guidelines. As a result, we cannot say the district court erred in its finding that Campbell's prior conviction was a crime of violence.

## V.

The district court found that Campbell's trial testimony was a "willful attempt to obstruct justice" and applied a two-level adjustment for obstruction of justice. Campbell asserts this was error. However, we need not address the obstruction of justice findings because they did not affect Campbell's sentence. If a defendant is sentenced under the career offender guidelines, as Campbell was, the guidelines do not permit an upward adjustment for obstruction of justice. United States v. Warren, 361 F.3d 1055, 1058 (8th Cir. 2004). Although the district court found that Campbell obstructed justice, it did not apply that adjustment to Campbell's sentence. Because we affirm the district court's application of the career offender guidelines, we need not address Campbell's obstruction of justice argument.

We affirm Campbell's conviction and sentence.

_____