# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2065

_____

United States of America,        *
                               *

        Appellee,           *        Appeal from the United States
                               *        District Court for the
      v.                   *        Eastern District of Missouri
                               *

Damion L. Tripp,            *        [UNPUBLISHED]
                               *

        Appellant.         *

_____

Submitted: December 18, 2009
Filed: April 5, 2010

_____

Before LOKEN, Chief Judge[1], BENTON, Circuit Judge, VIKEN,[2] District Judge.

_____

VIKEN, District Judge.

Following his conviction for two counts of possession with intent to distribute controlled substances, Damion Tripp appeals the district court's[3] denial of his motions

_____

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

[2]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota, sitting by designation.

[3]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

to suppress, to strike the jury panel, and for judgment of acquittal. Tripp also challenges the conduct of the prosecutor during plea negotiations. We affirm.

## I.

On July 5, 2006, a confidential informant ("CI") contacted Corey Mitchell, a narcotics officer with the Poplar Bluff, Missouri, Police Department, and Jason Morgan, an officer with the Drug Task Force. The CI informed the officers that Tripp and a person whom the CI knew as "Frank" were selling drugs from a residence in Poplar Bluff, Missouri. The CI told the officers that he had purchased narcotics from Tripp and Frank for the past year and that Tripp and Frank lived at the residence.

Officers Mitchell and Morgan met with the CI that same day. The CI told them that he could purchase crack cocaine from Frank or Tripp, who is known as "Fat Man." The officers decided to conduct a controlled buy at the residence. To that end, the officers searched the CI to ensure he was not in possession of any narcotics and provided the CI with $40 in cash and a recording device. The officers drove the CI to an area near the target location. The officers observed the CI enter the residence and exit approximately three minutes later.

The CI returned to the officers' vehicle. The CI turned over a rock of crack cocaine, which was field tested by Officer Morgan. The rock tested positive for cocaine base. A malfunction with the recording device rendered the recording blank. The CI stated he purchased the crack cocaine from Frank, who had retrieved it from a black case in his girlfriend's purse. The CI identified Frank's girlfriend as "Amanda."

Officer Mitchell prepared an affidavit detailing the information provided by the CI and the events surrounding the controlled buy. Based on the affidavit, a state circuit court judge issued a warrant to search the residence and to seize any controlled substances, imitation controlled substances, drug paraphernalia, records and/or monies

related to drug sales, and mail. Officers Mitchell and Morgan, along with other police officers, executed the search warrant on July 13, 2006. As the officers approached the residence, Tripp walked out onto the porch, saw the officers walking toward him, ran back inside the residence, and shut the door. The officers pursued Tripp into the residence and found him in the bathroom attempting to flush down the toilet several bags of what was later identified as marijuana. Two bags of marijuana were floating in the toilet bowl. Eight other bags of marijuana were recovered from the plumbing of the toilet. One gallon size bag of marijuana was found on the floor of a bedroom where Tripp kept his music equipment.

The police seized other drugs, including what was later identified as cocaine base, as well as a variety of drug paraphernalia located in the house. The cocaine base was in two bags inside a size 12 Nike Shox shoe found on the floor of the bedroom that contained Tripp's music equipment. Also inside the Nike shoe was a small bag of marijuana. From Tripp's person, the police seized $875 in cash and digital scales. Tripp was arrested and booked into the county jail. At that time, he was wearing a pair of size 12 Nike Shox shoes.

On August 18, 2006, a federal grand jury indicted Tripp on one count of possession with intent to distribute a substance containing fifty grams or more of cocaine base. On March 15, 2007, the government filed a criminal information giving notice that Tripp was subject to an enhanced sentence due to a prior felony conviction for a drug offense. On June 21, 2007, the government filed a superseding indictment charging Tripp with one count of possession with intent to distribute a substance containing fifty grams or more of a cocaine base (count 1) and one count of possession with intent to distribute a substance containing a detectable amount of marijuana (count 2). The government also filed an amended criminal information. The sentencing enhancement exposed Tripp to a mandatory minimum of 20 years imprisonment on count one and a term of imprisonment not to exceed 10 years on count two of the indictment.

Tripp filed a motion to suppress the physical evidence seized from the residence and his person and all statements made to law enforcement. Tripp argued that the state circuit court lacked sufficient probable cause to issue the search warrant and that Officer Mitchell's affidavit contained false or misleading information. The magistrate judge recommended denying Tripp's suppression motion, finding that the affidavit did not contain false or misleading information and that the search warrant was based on probable cause. The district court adopted the magistrate judge's report and recommendation over Tripp's objections and denied Tripp's suppression motion.

Trial commenced on January 25, 2008. Prior to *voir dire*, the district court granted Tripp a continuing objection to preserve the issues raised in his suppression motion. During *voir dire*, a juror inquired as to why there were no African-Americans present on the venire panel. The district court replied that the voter registration records and, in some counties, driver's license registrations were the basis for the jury pool and that considerable effort was made to enhance diversity in the jury selection process. The juror then asked whether Tripp could obtain a new panel based on the fact that no African-Americans were present. The district court declined to answer this question. During *voir dire*, Tripp moved to strike the all-white jury panel. The district court denied Tripp's motion.

Tripp orally moved for a judgment of acquittal at the close of the government's case-in-chief and again at the close of all the evidence. The district court denied the motions. Following a two-day trial, the jury convicted Tripp on both counts of the superseding indictment. Tripp filed motions for judgment of acquittal and for a new trial. The district court denied the motions. On April 28, 2008, the district court sentenced Tripp to a term of imprisonment of 240 months on count one and 108 months on count two, with the terms to run concurrently, followed by an aggregate term of 10 years supervised release. The sentence included application of the sentencing enhancement based on Tripp's prior felony drug conviction.

Tripp timely appealed his conviction, alleging the following errors: (1) the district court erred in denying his suppression motion because the search warrant lacked probable cause;[4] (2) the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to convict him on both counts; (3) the district erred in denying his motion to strike the all-white jury panel, thereby violating his Sixth Amendment right to a fair trial; and (4) the government violated his Fifth Amendment right to due process by informing him that if he did not plead guilty, the government would seek a sentencing enhancement based on a prior felony drug conviction.[5]

## II.

Tripp claims the district court erred in denying his suppression motion because the search warrant was not based on probable cause. Tripp further alleges the affidavit submitted in support of the search warrant application contained false or misleading statements and impermissible hearsay. When reviewing a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. United States v. Montes-Medina, 570 F.3d 1052, 1059 (8th Cir. 2009) (citing United States v. Hart, 544 F.3d 911, 913-14 (8th Cir. 2008), *cert. denied*, __U.S.__, 129 S. Ct. 2069 (2009)). We will affirm the denial of a suppression motion " 'unless we find that the decision is unsupported by the evidence,

---

[4]Following the return of the jury verdict, Tripp filed a motion for new trial that again challenged the racial composition of the jury and the inclusion of evidence obtained during the execution of the search warrant. The district court denied the motion. Tripp does not specifically claim on appeal that the district court erred in denying his motion for new trial. Thus, the court will consider Tripp's challenges within the context of his motions to suppress and to strike the jury panel.

[5]Tripp's counsel on appeal does not join in Tripp's challenge to the prosecutor's conduct.

based on an erroneous view of the law, or the Court is left with a firm conviction that a mistake has been made.' " United States v. Pennington, 287 F.3d 739, 742 (8th Cir. 2002) (quoting United States v. Madrid, 152 F.3d 1034, 1037 (8th Cir. 1998)).


The Fourth Amendment requires that search warrants be based on probable cause. Montes-Medina, 570 F.3d at 1059 (citing Hart, 544 F.3d at 914). Probable cause exists if the search warrant application and affidavit " 'describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place, and our duty on appeal is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." United States v. Keele, 589 F.3d 940, 943 (8th Cir. 2009) (quoting Montes-Medina, 570 F.3d at 1059)); see also Illinois v. Gates, 462 U.S. 213, 238-39 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed.") (additional citation omitted). "Probable cause requires only a showing of fair probability, not hard certainties." United States v. Hudspeth, 525 F.3d 667, 676 (8th Cir. 2008) (citing Gates, 462 U.S. at 231).

When the issuing court relies solely on an affidavit to establish probable cause, only the information " 'found within the four corners of the affidavit may be considered.' " United States v. Wells, 347 F.3d 280, 286 (8th Cir. 2003) (quoting United States v. Gladney, 48 F.3d 309, 3012 (8th Cir. 1995)). The affidavit must provide the issuing court with a substantial basis to support a finding of probable cause; wholly conclusory statements that the affiant "has cause to suspect and does believe that" illegal activity is occurring "will not do." Gates, 462 U.S. at 239 (internal quotation marks and additional citation omitted). The affidavit for a search

warrant should be examined using a common-sense, non-technical approach. Hudspeth, 525 F.3d at 674 (citing United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007)). Courts look to the totality of the circumstances to determine whether information provided by a confidential informant is reliable so as to support a finding of probable cause. Gates, 462 U.S. at 233-34. A reviewing court should afford great deference to the probable cause determination of the issuing judge. Hudspeth, 525 F.3d at 674 (citing Grant, 490 F.3d at 632).

We conclude that Officer Mitchell's affidavit was sufficient to establish probable cause for the issuance of the search warrant. An affidavit based on hearsay "is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented." Gates, 462 U.S. at 241-42 (internal quotation marks and additional citation omitted). The CI's information was based on his firsthand knowledge. He informed the officers that he had been purchasing crack cocaine from "Fat Man" and Frank for the past year and described the house in question with particularity. These facts afford his tip greater weight. See id. at 234 (noting that, even if an informant's motives are in question, his "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight . . ."). The CI's tip was against his penal interest as it implicated him in criminal activity, a fact which bolsters his credibility. See Pennington, 287 F.3d at 742-43 (finding of probable cause was supported by the fact that the CI implicated himself in criminal activity by cooperating with law enforcement). Most important, Officers Morgan and Mitchell independently corroborated the CI's information by arranging and monitoring a controlled buy from Tripp's residence. See id. at 742 (finding that officers reliably corroborated the CI's information regarding the manufacture and distribution of narcotics at defendant's farm by arranging and monitoring a controlled buy at the farm).

Tripp concedes he is not entitled to a Franks[6] hearing, yet still asserts that the affidavit contained false and misleading statements. Tripp claims that, at his preliminary hearing, Officers Mitchell and Morgan falsely testified that Tripp was present at the house when the controlled buy occurred. Tripp alleges the officers failed to inform him they had conducted a controlled buy and obtained a search warrant. Tripp argues the officers should have recorded the controlled buy or should have arrested Frank or Frank's girlfriend to verify the CI's information. Tripp claims the officers failed to verify the existence of the purse from which Frank obtained the rock cocaine. Tripp alleges the officers made no attempt to verify the CI's statement that he had purchased drugs from Tripp and Frank over a one year period. Finally, Tripp challenges the fact that the CI never testified in this case, making the CI's statements hearsay. We find these allegations to be without merit. The district court did not err in denying Tripp's suppression motion.

## III.

Tripp claims the district court erred in denying his motions for judgment of acquittal. Tripp challenges the sufficiency of the evidence to sustain his convictions on both counts of the superseding indictment. With respect to count one, Tripp argues the prosecutor failed to prove beyond a reasonable doubt that he was in constructive possession of the cocaine base. With respect to count two, Tripp argues the evidence should have been suppressed. We review a challenge to the sufficiency of the evidence *de novo*, "consider[ing] the evidence in the light most favorable to the jury's verdict and draw[ing] all reasonable inferences in the Government's favor." United States v. Coleman, 584 F.3d 1121, 1125 (8th Cir. 2009) (citing United States v. Ironi, 525 F.3d 683, 689-90 (8th Cir. 2008); and United States v. McAtee, 481 F.3d 1099, 1104 (8th Cir. 2007)). We do not assess the credibility of witnesses or re-weigh the evidence, and we will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. (citing United States v. Santana, 524

---

[6]Franks v. Delaware, 438 U.S. 154 (1978).

F.3d 851, 853 (8th Cir. 2008)); see also United States v. Castro-Gaxiola, 479 F.3d 579, 581 (8th Cir. 2007) ("The verdict is upheld if any interpretation of the evidence could lead a reasonable jury to find a defendant guilty beyond a reasonable doubt.") (citing United States v. Armstrong, 253 F.3d 335, 336 (8th Cir. 2001)). Because the standard of review is strict, we will not "lightly overturn" a jury's verdict. Castro-Gaxiola, 479 F.3d at 581 (citing United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002)).

Tripp cannot satisfy this high burden. Because we hold the district court did not err in denying Tripp's suppression motion, Tripp's challenge to the sufficiency of the evidence with respect to count two must fail. Further, we find the evidence is sufficient to support Tripp's conviction regarding count one. Officers seized the cocaine base from two bags located inside a size 12 Nike Shox shoe, the same size and style worn by Tripp. The shoe containing drugs was on the floor of a bedroom in which Tripp stored his music equipment. Tripp made incriminating statements to law enforcement regarding the cocaine base. From Tripp's person, police seized a digital scale with visible white residue. As part of his defense, Tripp theorized the cocaine base could have belonged to Frank or Frank's girlfriend. The jury rejected this argument in light of the substantial evidence establishing constructive possession. We will not disturb the jury's verdict. The district court did not err in denying Tripp's motions for judgment of acquittal.

**IV.**

Tripp claims the district court erred in denying his motion to strike the all-white jury venire and that this error violated his constitutional right to a fair trial.[7] " 'The Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the juror selection process.' " United States v. Jones, 687 F.2d 1265, 1269 (8th Cir. 1982) (quoting United States v. Turcotte, 558 F.2d 893, 895 (8th Cir. 1977)). The Supreme Court has held that " 'petit juries must be drawn from a source fairly representative of the community' " in that " 'jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.' " Duren v. Missouri, 439 U.S. 357, 363-64 (1979) (quoting Taylor v. Louisiana, 419 U.S. 522, 538 (1975)). The Duren Court set forth the standard by which a defendant may constitutionally challenge the jury selection process:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Id. at 364.

---

[6]Tripp does not allege a violation of the Jury Selection and Service Act, 28 U.S.C. §§ 1861-1869. Even if he had, he would be barred from pursuing such a claim because he failed to object to the venire panel before *voir dire* began. See United States v. Jones, 687 F.2d 1265, 1269 (8th Cir. 1982) (citing 28 U.S.C. § 1867(e); United States v. Geelan, 509 F.2d 737, 740 (8th Cir. 1974)). Tripp is not barred from raising a constitutional challenge to the jury selection process. See id. (citing 28 U.S.C. § 1867(e)).

Tripp concedes he "does not know" if the underrepresentation of African-Americans in the venire panel was due to a systematic exclusion of the group or "just by mere coincidence." Tripp argues the standard is "far too high and that no litigant is going to be able to show a systematic exclusion of a group or race." Tripp claims it is impractical to expect a litigant to research the jury pool and urges this court to "reassess its current state of the law."

Tripp's challenge to the composition of the jury venire is without merit. Even assuming the first two requirements of the <u>Duren</u> test have been met, Tripp has presented no evidence to satisfy the third requirement. Absent such evidence, Tripp cannot make a showing of a constitutional violation. <u>See</u> <u>Jones</u>, 687 F.2d at 1269-70. Further, this court lacks the authority or discretion to alter binding Supreme Court precedent. The district court did not err in denying Tripp's motion to strike the jury panel.

## V.

Finally, Tripp alleges the government violated his Fifth Amendment right to due process by engaging in vindictive prosecution. Tripp says the prosecutor informed defense counsel that he would not seek a sentencing enhancement if Tripp pled guilty. Tripp argues the prosecutor punished him for exercising his right to a jury trial by seeking a sentencing enhancement.

A defendant cannot be punished for exercising a protected statutory or constitutional right. <u>United States v. Goodwin</u>, 457 U.S. 368, 372 (1982). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' " <u>Id.</u> (citing <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 363 (1978)). A defendant can establish prosecutorial vindictiveness through objective evidence that the prosecutor's actions were intended to punish the defendant for exercising a legal right. <u>United States v. Campbell</u>, 410 F.3d 456, 461 (8th Cir. 2005) (citing <u>United States v. Rodgers</u>, 18 F.3d 1425, 1429 (8th Cir. 1994)). Alternatively,

a defendant is entitled to a presumption of vindictiveness "where there exists a reasonable likelihood of vindictiveness, which may arise when prosecutors increase the number or severity of charges." Id. (citing Rodgers, 18 F.3d at 1429-30). The presumption of vindictiveness applies only in rare circumstances. Id. at 462 (citing United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001)). The burden is on the defendant to show that the prosecution took action to punish the defendant for exercising a legal right. Id. at 461 (citing United States v. Leathers, 354 F.3d 955, 961 (8th Cir. 2004)).

"[I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Bordenkircher, 434 U.S. at 363. The Supreme Court has recognized plea negotiation as a legitimate process:

> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"-and permissible-"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

> It is not disputed here that [the defendant] was properly chargeable under the recidivist statute, since he had in fact been convicted of two previous felonies. In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." To hold that the

prosecutor's desire to induce a guilty plea is an "unjustifiable standard," which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself. Moreover, a rigid constitutional rule that would prohibit a prosecutor from acting forthrightly in his dealings with the defense could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged.

Id. at 364-65 (internal citations omitted).

Here, as in Bordenkircher, the prosecution sought to persuade Tripp to accept a plea agreement by offering lenient treatment. In Bordenkircher, the prosecution offered to refrain from bringing additional charges under the state career offender statute in exchange for the defendant's guilty plea. The additional charges were wholly warranted by the evidence. Here, the prosecution offered to refrain from seeking a sentencing enhancement if Tripp entered a guilty plea. Again, the evidence fully supports the enhancement, and Tripp does not allege the enhancement was not objectively reasonable. See Campbell, 410 F.3d at 462 (noting there can be no prosecutorial vindictiveness if the prosecutor's decision was based on some objective reason other than to punish the defendant for exercising his legal rights). In both cases, plea negotiations were unsuccessful, and the defendants faced higher penalties after trial. In neither case was a presumption of prosecutorial vindictiveness warranted. See Goodwin, 457 U.S. at 382-83 ("[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified."). We find the prosecution did not engage in prosecutorial vindictiveness. The course of conduct engaged in by the prosecution was no more than openly presenting Tripp with the choice of forgoing trial or facing a sentencing enhancement to which he was plainly subject. See Bordenkircher, 434 U.S. at 365. This commonly-used plea bargaining technique did not violate Tripp's right to due process.

## VI.

Accordingly, we affirm Tripp's conviction.

_____